**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION**

| | |
|---|---|
| JAMERE GRIFFIS,<br><br>Plaintiff,<br><br>v.<br><br>STARCON INTERNATIONAL, INC.,<br><br>Defendant. | <br><br><br><br>Case No.<br><br>**Jury Trial Demanded** |

**COMPLAINT**

Plaintiff Jamere Griffis ("Griffis"), by and through his counsel, ASG Law Firm, states as follows in support of his Complaint against Defendant Starcon International, Inc. ("Starcon"):

**NATURE OF THE ACTION**

1. Through this action, Griffis seeks to hold Starcon accountable for terminating his employment in retaliation for reporting a life-threatening workplace hazard, for taking action to shield his coworkers from that hazard, and for seeking medical care for the injury that hazard caused. Griffis refused to stay silent about a hydrogen sulfide ("$H_2S$") gas leak that placed dozens of his coworkers at risk of serious injury or death. After Griffis reported that he had been personally injured by that exposure, Starcon terminated his employment instead of correcting the dangerous condition.

2. Griffis brings this action under (a) the Illinois Whistleblower Act, 740 ILCS 174/15, for retaliation based on his good-faith disclosures of a workplace safety hazard; (b) Illinois common law prohibiting the retaliatory discharge of an employee in violation of a clearly mandated public policy of the State of Illinois to protect the health and well-being of workers; and (c) Illinois common law prohibiting the retaliatory discharge of an employee for

exercising rights under the Illinois Workers' Compensation Act, including seeking medical care for a work-related injury, in violation of the public policy expressed in that Act, including Section 4(h), 820 ILCS 305/4(h).

## PARTIES

3. Griffis is an individual who resides in, is domiciled in, and is a citizen of the State of Indiana.

4. Starcon is a corporation organized under the laws of the State of Illinois with its principal place of business in Texas. Starcon is therefore a citizen of Illinois and Texas for purposes of 28 U.S.C. § 1332(c)(1).

## JURISDICTION AND VENUE

5. This Court has personal jurisdiction over Starcon because Starcon is a corporation organized under the laws of Illinois, Starcon transacts business in Illinois, and the conduct giving rise to this action occurred in Illinois.

6. This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1332(a)(1) because Griffis and Starcon are citizens of different States and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (b)(2) because Starcon resides in this District and a substantial part of the events giving rise to Griffis's claims occurred in Cook County, Illinois, which lies within the Eastern Division of this District.

## FACTUAL ALLEGATIONS

### A. Plaintiff's Employment With Starcon

8. Starcon offers comprehensive industrial and mechanical services in the refining, chemical, natural gas processing, and food and beverage industries.

9. Starcon operated a jobsite for its customer, Ingredion Incorporated in Bedford Park, Illinois (the "Ingredion Site").

10. In or around July 2024, Starcon hired Griffis as a safety technician to work at the Ingredion Site. Griffis had more than a decade of prior experience as a safety technician.

11. Griffis's initial supervisor at Starcon was safety manager Andre Simpson.

12. Under Simpson's supervision, Griffis repeatedly reported safety concerns to Simpson regarding confined-space entry procedures and line-walk safety practices at the Ingredion Site. Simpson mostly ignored these concerns.

13. Starcon subsequently removed Simpson from the safety manager position and replaced him with Eric Berumen. Berumen initially praised Griffis's ten-plus years of experience and regularly complimented Griffis's performance as a safety technician.

**B. The $H_2S$ Leak At The Ingredion Site**

14. On April 7, 2026, while walking through the Ingredion Site, Griffis detected chemical vapor emanating from a sewer. Griffis tested the air using a gas meter and recorded an initial reading of 200 parts per million ("ppm"), rising to 500 ppm, of $H_2S$.

15. $H_2S$ is a highly toxic gas. The National Institute for Occupational Safety and Health considers an atmospheric $H_2S$ concentration of 100 ppm immediately dangerous to life or health. Exposure at 500 to 700 ppm can cause collapse in five minutes and death after thirty to sixty minutes. Exposure above 700 ppm can cause death within minutes. The Occupational Safety and Health Administration's ("OSHA") permissible exposure limit for $H_2S$ is a ceiling of 20 ppm, with a single peak of up to 50 ppm permitted for no more than ten minutes. 29 C.F.R. § 1910.1000, Table Z-2. The 500 ppm reading Griffis recorded at the source of the leak was ten times that maximum peak.

16. Griffis immediately reported the hazardous condition to Starcon's site leaders, including Berumen's supervisor, Ernie Abott, and Dan Smith. Smith responded to Griffis that the leak "has been happening for years." None of the site leaders took urgent action in response to Griffis's report. Instead, Starcon continued to allow its employees to work in and walk through the affected area, as it apparently had while the leak persisted for years.

17. On his own initiative, Griffis barricaded the affected area to prevent coworkers from entering and being exposed to the $H_2S$ leak. Based on Griffis's observations of ordinary pedestrian traffic through the area, Griffis's protective action likely protected between twenty and fifty coworkers from potential exposure to the leaking $H_2S$.

18. Safety personnel employed by Ingredion independently tested the area, confirmed escalating $H_2S$ readings consistent with Griffis's own meter readings, and asked Griffis whether he needed medical attention.

**C. Starcon's Medical Interference And Retaliation**

19. Later that same day, Griffis began experiencing headaches and body pain consistent with $H_2S$ exposure and reported these symptoms to his supervisor, Berumen.

20. Griffis asked Berumen to take him to a doctor. Rather than send Griffis to be evaluated in person by a physician, Berumen arranged a telephone consultation with a person Berumen said was a doctor, who advised Griffis to take Tylenol and get fresh air.

21. Berumen repeatedly instructed Griffis not to visit his own personal physician regarding his symptoms. Berumen instead told Griffis to contact Berumen directly—including overnight—if his symptoms worsened.

22. On April 8, 2026, Griffis's symptoms persisted, and Griffis attempted to visit the on-site Ingredion nurse for evaluation. The nurse was unavailable. Griffis informed Berumen of his attempt to seek medical care. Berumen did not respond.

23. Later that week, Griffis overheard Berumen's supervisor, Ernie Abott, tell Berumen to "get rid of his ass after the shutdown," referring to a planned site shutdown.

**D. Starcon's Termination Of Griffis's Employment**

24. On April 13, 2026, Starcon terminated Griffis's employment.

25. Starcon told Griffis that he was being terminated for purported "performance issues."

26. During the termination meeting, Berumen told Griffis that he should not have gone to the nurse, referring directly to Griffis's attempt to seek medical attention following the $H_2S$ exposure.

27. At the time of his termination, Griffis had no documented performance issues under Berumen's supervision and was not on any performance improvement plan.

28. As a direct and proximate result of Starcon's termination of his employment, Griffis has suffered lost wages and benefits, emotional distress, humiliation, and other damages, and Griffis earned less at his subsequent employment than he earned at Starcon.

COUNT I
**Violation of the Illinois Whistleblower Act**
**740 ILCS 174/15**

29. Griffis re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

30. At all relevant times, Griffis was an "employee" of Starcon and Starcon was an "employer" as those terms are defined in 740 ILCS 174/5.

31. Section 15(c) of the Illinois Whistleblower Act prohibits an employer from taking retaliatory action against an employee for disclosing or threatening to disclose, to any supervisor, principal officer, board member, or supervisor in an organization that has a contractual relationship with the employer who makes the employer aware of the disclosure, information

related to an activity, policy, or practice of the employer, where the employee has a good-faith belief that the activity, policy, or practice (a) violates a State or federal law, rule, or regulation, or (b) poses a substantial and specific danger to employees, public health, or safety.

32. Griffis engaged in protected activity under the Act, including, without limitation, by disclosing to multiple Starcon site leaders that Starcon's employees were being exposed to the April 7, 2026 $H_2S$ leak and that Starcon was permitting its employees to work in and pass through the affected area. Griffis did so in the good-faith belief that this practice violated State or federal law, rules, or regulations, including without limitation 29 U.S.C. § 654(a)(1) and (a)(2) and the $H_2S$ exposure limits in 29 C.F.R. § 1910.1000, Table Z-2, and posed a substantial and specific danger to the health and safety of Starcon and Ingredion personnel. Griffis also disclosed the leak and his readings to Ingredion's safety personnel, and Starcon was aware of that disclosure, including because Berumen accompanied Ingredion safety personnel when they took readings at the sewer.

33. Starcon was aware of Griffis's protected disclosures. Griffis made those disclosures directly to Starcon site leaders, including Berumen's supervisor, Ernie Abott—the same supervisor who later told Berumen to "get rid of his ass after the shutdown"—and Dan Smith. Berumen was also present when the $H_2S$ readings at the sewer reached 500 ppm.

34. As a result of Griffis's protected disclosures, Starcon subjected Griffis to retaliatory action, as defined in 740 ILCS 174/5, including an adverse employment action that could dissuade a reasonable worker from disclosing or threatening to disclose information protected by Section 15 of the Act, culminating in the termination of his employment on April 13, 2026—six days after his protected disclosures.

35. The causal connection between Griffis's protected disclosures and Starcon's retaliatory conduct is shown by, without limitation: (a) the close temporal proximity between Griffis's protected disclosures and his termination; (b) Abott's instruction to Berumen to "get rid of" Griffis after the shutdown; (c) Berumen's statement during the termination meeting that Griffis should not have gone to the nurse; and (d) the pretextual nature of Starcon's stated reason for termination.

36. Starcon's decision to terminate Griffis's employment was not predicated solely upon grounds other than Griffis's protected disclosures.

37. As a direct and proximate result of Starcon's violation of the Illinois Whistleblower Act, Griffis has suffered and continues to suffer lost wages and benefits, emotional distress, and other harm, and he is entitled to all relief necessary to make him whole under 740 ILCS 174/30.

COUNT II
**Common Law Retaliatory Discharge**

38. Griffis re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

39. Illinois recognizes a common-law cause of action for retaliatory discharge where an employer discharges an employee in retaliation for the employee's activities, and the discharge violates a clearly mandated public policy of the State of Illinois.

40. Illinois has a clearly mandated public policy favoring the protection of workers from unreasonably dangerous workplace conditions and favoring the reporting of workplace safety hazards, reflected in, among other sources, the Occupational Safety and Health Act, whose stated purpose is "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions," 29 U.S.C. § 651(b).

41. Discharging an employee—particularly a safety technician whose job is to identify and report hazards—for reporting a potentially lethal toxic-gas release and for acting to keep coworkers out of it directly undermines this public policy. If employers may fire employees for such conduct, employees will be deterred from reporting hazards, and the workers whom these laws protect will be exposed to serious injury or death.

42. Griffis engaged in activity protected by this clearly mandated public policy when he: (a) reported the April 7, 2026 $H_2S$ leak to multiple of Starcon's site leaders; (b) took protective action by barricading the hazardous area on his own initiative to protect coworkers from potentially fatal exposure; and (c) reported his exposure-related symptoms to his supervisor.

43. Starcon terminated Griffis's employment in retaliation for this protected conduct.

44. Starcon's stated reason for terminating Griffis is pretextual.

45. Starcon's termination of Griffis's employment in retaliation for his protected safety-related conduct violates the clearly mandated public policy of the State of Illinois.

46. Starcon's conduct as alleged herein was malicious, willful and wanton, and/or committed with reckless indifference to Griffis's rights, entitling Griffis to an award of punitive damages.

47. As a direct and proximate result of Starcon's retaliatory discharge of Griffis, Griffis has suffered and continues to suffer damages, including lost wages and benefits, emotional distress, humiliation, and other compensable harm.

COUNT III

**Common Law Retaliatory Discharge for Exercising Rights Under the Illinois Workers' Compensation Act**

48. Griffis re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

49. At all relevant times, Griffis was an employee of Starcon, and Starcon was an employer subject to the Illinois Workers' Compensation Act, 820 ILCS 305/1 et seq. (the "Workers' Compensation Act").

50. On April 7, 2026, Griffis sustained an accidental injury arising out of and in the course of his employment with Starcon when he was exposed to $H_2S$ at the Ingredion Site while performing his duties as a Starcon safety technician.

51. The Workers' Compensation Act entitles an employee injured on the job to necessary first aid and medical services reasonably required to cure or relieve the effects of the injury, and entitles the employee to choose his own physicians. 820 ILCS 305/8(a).

52. The Workers' Compensation Act expresses the public policy of the State of Illinois against retaliatory discharge in Section 4(h), which provides in relevant part: "It shall be unlawful for any employer, individually or through any insurance company or service or adjustment company, to discharge or to threaten to discharge, or to refuse to rehire or recall to active service in a suitable capacity an employee because of the exercise of his or her rights or remedies granted to him or her by this Act." 820 ILCS 305/4(h).

53. Illinois common law prohibits an employer from discharging an employee for exercising rights under the Workers' Compensation Act, because such a discharge violates the clearly mandated public policy of the State of Illinois. That protection extends to an employee who requests or seeks medical attention for a work-related injury, whether or not the employee has yet filed a claim for compensation.

54. Griffis exercised his rights under the Workers' Compensation Act by, among other things: (a) reporting to Berumen, his supervisor, that he had developed headaches and body pain as a result of his workplace exposure to $H_2S$; and (b) asking Berumen to take him to a doctor and

otherwise requesting and seeking medical evaluation and treatment for that injury, including by attempting to obtain an evaluation from the on-site Ingredion nurse on April 8, 2026, and informing Berumen of that attempt.

55. Starcon's hostility to Griffis's exercise of those rights was evident before it discharged him. Among other things, Berumen refused Griffis's request for an in-person medical evaluation and substituted a telephone call, repeatedly instructed Griffis not to visit his own physician, and failed to respond when Griffis reported his attempt to obtain medical care.

56. On April 13, 2026, six days after Griffis reported his injury and began seeking medical care, Starcon discharged Griffis in retaliation for his exercise of rights under the Workers' Compensation Act.

57. The causal connection between Griffis's exercise of those rights and his discharge is shown by, without limitation: (a) the six days between Griffis's injury report and his termination; (b) Abott's instruction to Berumen, days after Griffis reported his injury and sought care, to "get rid of his ass after the shutdown"; (c) Berumen's statement during the termination meeting that Griffis should not have gone to the nurse; and (d) the pretextual nature of Starcon's stated "performance issues" reason, which Starcon had never raised before Griffis reported his injury.

58. Starcon's discharge of Griffis because he exercised his rights under the Workers' Compensation Act violates the clearly mandated public policy of the State of Illinois expressed in that Act, including Section 4(h), and gives rise to a claim for retaliatory discharge under Illinois common law.

59. Starcon's conduct as alleged herein was malicious, willful and wanton, and/or committed with reckless indifference to Griffis's rights, entitling Griffis to an award of punitive damages.

60. As a direct and proximate result of Starcon's retaliatory discharge of Griffis, Griffis has suffered and continues to suffer damages, including lost wages and benefits, emotional distress, humiliation, and other compensable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Jamere Griffis respectfully requests that this Court enter judgment in his favor and against Starcon on Counts I through III and award the following relief:

A. Back pay, including lost wages and the value of lost benefits, with interest, including interest at 9% per annum as provided in 740 ILCS 174/30;

B. reinstatement with the same seniority status Griffis would have had or, in lieu of reinstatement, front pay;

C. liquidated damages of up to $10,000 and a civil penalty of $10,000 payable to Griffis, pursuant to 740 ILCS 174/30 (Count I);

D. compensatory damages, including damages for emotional distress and other harm, in an amount to be proven at trial (Counts I, II, and III);

E. punitive damages under the retaliatory discharge claims (Counts II and III);

F. litigation costs, expert witness fees, and reasonable attorneys' fees pursuant to 740 ILCS 174/30;

G. any other recovery available under the Illinois Whistleblower Act, including preliminary and permanent injunctive relief;

H. prejudgment interest to the extent allowed by law; and

I. such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

Dated: November 24, 2026

Respectfully submitted,

/s/ Anand C. Mathew
Andrew Greene
M. Katherine Boychuk
Anand C. Mathew
ASG Law Firm, LLC
181 W Madison St., Suite 4700
Chicago, IL 60602
(312) 274-2031
andy@asglawfirm.com
kay@asglawfirm.com
anand@asglawfirm.com

*Attorneys for Plaintiff Jamere Griffis*